# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA – HARRISONBURG DIVISION

**MAURICE DOSSO**
19 Venetian Court
Hedgesville, WV 25427
Tel: (571) 771-6371

      **Plaintiff,**

**Vs.**

**THE COVENTRY GROUP COMMUNITY MANAGEMENT, Inc.**
2045 Valley Avenue, Suite 100
Winchester, VA 22601

**STONEBROOK VILLAGE HOA**
2045 Valley Avenue, Suite 100
Winchester, VA 22601

**Keila Navarro,**
**Community Manager**
2045 Valley Avenue, Suite 100
Winchester, VA 22601

**ZZ AUTO TOWING AND RECOVERY**
874 Cheshire Road
Bunker Hill, WV 25413

      **Defendants**.

Civil Action No. _5:25cv00050_

CLERK'S OFFICE U.S. DISTRICT. COURT
AT HARRISONBURG, VA
FILED

MAY 2 7 2025

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

## COMPLAINT

Plaintiff, Maurice Dosso, alleges as follows:

1.    This action is brought by Maurice Dosso to enforce the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and the Fair Housing Act of

1968, as amended, 42 U.S.C. §§ 3601-19 ("FHA").

2.    This Court has original subject matter and federal question jurisdiction over this action under 28 U.S.C. §§ 1331.

3.    Venue is proper in this District under 28 U.S.C. § 1391 because the Court has personal jurisdiction over the principal Defendant "The Coventry Group Community Management, Inc.," which is located or headquartered in Winchester, VA.

## **THE PARTIES**

4. Plaintiff Maurice Dosso is a Black homeowner, member of a protected class, a resident of Stonebrook Village, a community managed by Defendant the Coventry Group Community Management, Inc., in the State of West Virginia.

5.    Defendant The Coventry Group Community Management, Inc. (hereinafter "Coventry") is a property management company based in Winchester, Virginia.

6.    Defendant Keila Navarro is an agent of Defendant Coventry and the community manager of Stonebrook Village where Plaintiff lives.

7.    Defendant ZZ Auto Towing and Recovery is the towing company that took away Plaintiff's vehicle on behalf of the principal Defendants Coventry and Keila Navarro.

8.    Defendant Stonebrook Village HOA is the actual community HOA managed by Defendant Coventry and its agent Defendant Keila Navarro.

## FACTUAL ALLEGATIONS

9.   Plaintiff is a homeowner and a resident of Stonebrook Village since January 2012. Plaintiff is one of the earlier residents. Before Plaintiff's row of townhouses, there was only one row. Now the entire community is built and full. Plaintiff witnessed it being built.

10.   Since Plaintiff's arrival to Stonebrook Village in January 2012, parking policy seemed very liberal and in addition to their own one-car garage parking and additional driveway parking, residents could freely park in the common parking areas along roadsides and the designated community parking, which came later.

11.   Plaintiff, like all other residents, used these roadside parking areas as well as the community parking freely from January 2012 until June 1st, 2023, when, abruptly, and without warning, Plaintiff came to find his beloved 2000 White Ford Expedition Eddie Bauer missing. Plaintiff called the Sheriff's Department thinking the vehicle had been stolen. Sheriff's Deputies arrived on the scene and took hours searching and inquiring, talking to neighbors until they found out late at night that Plaintiff's vehicle had been towed by Defendant ZZ Towing. Plaintiff learned that Defendant Keila Navarro called ZZ Towing and authorized it to take away Plaintiff's vehicle.

12.   The Sheriff's Deputies were puzzled wondering why Plaintiff's vehicle was towed and so was Plaintiff himself because the area was clearly marked with signage indicating parking is allowed. The West Virginia State

Police and the local Berkeley County Sheriff's Office were not notified before or after the towing as required by West Virginia Code Section 17C-14-13 and that is why the Sheriff's Deputies took hours searching and inquiring late into the night before discovering that Plaintiff's vehicle was not stolen but was rather taken by Defendants.

13.  Plaintiff contacted Stonebrook Village HOA and Defendant Keila Navarro via email that same night demanding answers.

14. Defendant Keila Navarro answered Plaintiff's email and admitted Plaintiff's vehicle was parked on a roadside where parking is expressly authorized and allowed with appropriate and clearly visible signage indicating such authorization as witnessed by the investigating Sheriff's Deputies at the scene but added that she ordered the towing because Plaintiff's vehicle was parked opposite of traffic.

15. At the time Defendants took Plaintiff's family SUV, the vehicle was fully operational, fully registered with the West Virginia Department of Motor Vehicle, the tags and plates were current, it was insured as required by law, it was not abandoned or disabled, and it was in fact Plaintiff's principal mode of transportation. It has been Plaintiff's principal mode of transportation for fifteen years. It was parked there for just a few short hours while Plaintiff's got another vehicle out of his narrow one-car garage's driveway.

16. Upon learning of Defendants' flabbergasting and fallacious reason for taking his property, Plaintiff replied and demanded Defendant Keila

Navarro return his family SUV. Plaintiff also told Defendant Keila Navarro that White residents have been parking in the direction of traffic or opposite of traffic since Plaintiff arrived more than a decade ago and Plaintiff has never seen a White homeowner's car get towed. Most of the homeowners are Whites, they park where parking is allowed and even where parking is not allowed and is expressly forbidden. But in over ten years of living there Plaintiff has never witnessed one get towed.

17.    Moreover, in West Virginia, in addition to notifying state and local law enforcement authorities as outlined supra, an HOA must notify a resident at least 96 hours before towing their vehicle for a parking violation. This notice must be in writing and inform the homeowner of the violation. The notice must clearly state the parking violation and provide information on how the resident can remedy the situation. Such notice is customary for HOAs in most states to prevent abuse and conflicts. Defendants gave Plaintiff no such notice before taking his family SUV.

18.    Plaintiff warned Defendant Keila Navarro that this was a clear, unambiguous, indisputable yet reprehensible case of discrimination and civil rights violation, specifically the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601-19 ("FHA"). And Plaintiff demanded his vehicle be returned promptly.

19.    Plaintiff further warned and told Defendant Keila Navarro that the missing vehicle was a beloved and cherished family SUV that has been in

Plaintiff's family for fifteen years, Plaintiff's children grew up in it and it holds countless family souvenirs, memories, and a priceless sentimental value. Moreover it was Plaintiff's main and most reliable transportation.

20.   Plaintiff had no plans to part ways or get rid of this family SUV and intended to keep it for as long as possible. This year Plaintiff's Expedition would have qualified for "antique license plates" under WV law and that was Plaintiff's goal. Plaintiff believes this 2000 model Expedition Eddie Bauer was Ford's best, one of the best and most reliable SUV ever produced by Ford or any other U.S. automaker. This SUV was well built and required minimum maintenance and in fifteen years of ownership Plaintiff spent less on maintenance and insurance that he did on other vehicles in two, three or four years. Vehicles solidly built like this Expedition are harder and harder to come by nowadays. Plaintiff misses his Expedition and is still upset about losing it.

21.    The roadside parking area from which Plaintiff's Expedition was towed is directly across the street from Plaintiff's living room window and Plaintiff can see all cars parked there and for how long. White homeowners park their vehicles there for weeks and sometimes months in the direction of traffic or the opposite direction and Plaintiff has never seen anyone get towed. Plaintiff's Expedition was parked for just a few hours before Defendant Keila Navarro ordered it towed.

22.   Although parked opposite of traffic, Plaintiff's vehicle posed no

public safety hazard or danger. It did not obstruct traffic.

23.    Stonebrook Village itself is a relatively small rural community. And the road by which side Plaintiff's vehicle was parked is lightly traveled.

24.    Unless Defendants in general and Keila Navarro in particular had some other hidden and unspoken motives, there was no need to tow Plaintiff's car. A warning at least and a ticket at most would and should have sufficed.

25.    Upon multiple written complaints and requests that his property be returned, Defendants failed and refused and they continue to fail and refuse to comply. And no HOA resident should have to lose their principal transportation in this manner because the punishment did not fit any alleged fault committed. A fault, if any was committed, was inoffensive, immaterial and inconsequential. And therefore Defendants' towing action, without prior notice or warning, as required by law, was unwarranted, unjustifiable and unjustified. Defendant Keila Navarro's response to Plaintiff innocently parking even in the opposite direction of traffic was excessive, disproportionate and unreasonable.

26.    On information and belief, Plaintiff alleges that the real reason Defendants took the drastic action they did against his property was retaliation for past clashes and heated exchanges between Plaintiff and the Stonebrook Village HOA. Plaintiff had past interactions with the Stonebrook Village HOA because this HOA made it a habit of harassing Plaintiff with

bogus and farcical citations either for the front yard grass, the garbage can and/or some other absurd reason until Plaintiff confronted the Stonebrook Village HOA and asked to be left alone or he will sue. Plaintiff received the farcical citation about his grass when the grass at many of his White neighbors' properties was much taller and needed mowing more than Plaintiff's grass did.

27.    The Stonebrook Village HOA sent Plaintiff a ludicrous citation complaining about Plaintiff's garbage can being placed in Plaintiff's driveway right in front of Plaintiff's garage. And this is exactly where nearly all White residents keep their garbage can too. But to have peace of mind and avoid any unnecessary clash with HOA, Plaintiff stopped using his garbage can altogether years ago. Plaintiff washed his garbage can and put it away in his garage. In the meantime White residents continue to enjoy using and keeping their garbage can in front of their garage door and the smell in the heat of the summer is sometimes unbearable. Furthermore, early Monday mornings are garbage pick-up days and most homeowners move their garbage can from their driveway to the road edge for pick-up and are supposed to pull their garbage can back to their driveway after passage of the waste management truck. Many White homeowners don't and their garbage can in many cases remains by the roadside after passage of the waste management truck only to be blown sometimes by heavy winds onto the road obstructing traffic or posing road safety hazards.

28.  Since Defendants towed Plaintiff's vehicle, Plaintiff has been taking photographic and videographic evidence of White residents parking nearly anywhere and everywhere they please in the community, whether parking is authorized or expressly forbidden, at all times of day and night, with total impunity, thereby showing the clear and indisputable differential treatment and outright discrimination in the way Defendants treated Plaintiff as opposed to the preferential treatment reserved for White residents.

29.  To date Defendants have not returned Plaintiff's beloved family SUV that saw his children grow up. Despite Plaintiff's repeated requests, Defendants have refused and continue to refuse to return Plaintiff's property that is now considered forever lost.

30.  To date Plaintiff has received no document, official or otherwise, from any of the Defendants, acknowledging Plaintiff's vehicle was towed and how to get it back as required by law. Instead Plaintiff spent months demanding Defendants return his property but Defendants ignored Plaintiff's repeated requests.

31.  At the time Defendants took Plaintiff's SUV, the vehicle had been in Plaintiff's family for fifteen years. After Defendants refused to return Plaintiff's SUV upon request, Plaintiff repeatedly requested Defendants return the contents of the vehicle including cash money and many valuables. Defendants never returned any of Plaintiff's personal belongings and possessions left inside the vehicle.

32.  As a direct and proximate result of Defendants' racially motivated, retaliatory and abhorrent conduct and actions as described above, Plaintiff suffered irreparable damages. Plaintiff suffered, continues to suffer and will continue to suffer unless and until made whole by this Court in accordance with the law.

## CLAIMS FOR RELIEF

### COUNT I:   TORTIOUS BREACH OF CONTRACT

33.  The allegations in previous paragraphs above are incorporated herein by reference.

34.  Under West Virginia law, HOAs owe their residents contractual obligations including the duty to follow all state and federal law starting with the federal Fair Housing Act (FHA) which prohibits discrimination in housing. And HOAs have a duty to provide equal services and treatment for all residents regardless of race, color, ancestry or national origin. The conduct of Defendants Coventry, Keila Navarro and Stonebrook Village, as depicted supra, violates this duty and Defendants' contractual obligations to Plaintiff.

35.  With their conduct, as depicted above, Defendants have failed and refused to follow and comply with the Fair Housing Act (FHA) and West Virginia state law. Defendants are therefore liable to Plaintiff for tortious breach of contract.

36.  The Defendants' awful and unlawful conduct has resulted in injury

to Plaintiff. Defendants depriving Plaintiff of his property was extremely harmful to Plaintiff in an amount to be adduced at trial.

37. Defendants, in their tortious breach of contract, acted with actual and constructive malice thereby justifying the imposition of punitive damages to punish Defendants and deter all others in an amount to be adduced at trial.

### 4.    COUNT II:    NEGLIGENT BREACH OF CONTRACT

38. The allegations in previous paragraphs above are incorporated herein by reference.

39. Under West Virginia law, HOAs owe their residents contractual obligations including the duty to follow all state and federal law starting with the federal Fair Housing Act (FHA) which prohibits discrimination in housing. And HOAs have a duty to provide equal services and treatment for all residents regardless of race, color, ancestry or national origin. The conduct of Defendants Coventry, Keila Navarro and Stonebrook Village, as depicted supra, violates this duty and Defendants' contractual obligations to Plaintiff.

40. With their conduct, as depicted above, Defendants were negligent in their application and compliance with the federal Fair Housing Act (FHA) and West Virginia state law. Defendants are therefore liable to Plaintiff for negligent breach of contract.

41. The Defendants' awful and unlawful conduct has resulted in injury to Plaintiff. Defendants depriving Plaintiff of his property was extremely

harmful to Plaintiff in an amount to be adduced at trial.

42.  Defendants, in their negligent breach of contract, acted with actual and constructive malice thereby justifying the imposition of punitive damages to punish Defendants and deter all others in an amount to be adduced at trial.

### COUNT III:    TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

43.   The allegations in previous paragraphs above are incorporated herein by reference.

44.   Inherent in every contract is the Covenant of Good Faith and Fair Dealing whereby parties to a contract mutually pledge to one another to act in good faith and deal fairly throughout the entire life of the contract. This pledge is a cornerstone and a fundamental principle  of contract law in that it acts as a deterrent against spiteful and malicious conduct in contract which can carry severe civil liability and monetary penalty.

45.   The misconduct of Defendants, as described above, infringes upon the federal Fair Housing Act (FHA) prohibitions and West Virginia state law. It constitutes a tortious breach of the covenant of good faith and fair dealing with respect to Defendants' contractual obligations to Plaintiff. Under the covenant of good faith and fair dealing inherent in every contract with respect to Defendants' contractual obligations to Plaintiff, Defendants were required to give Plaintiff sufficient notice of an alleged parking violation and sufficient time to remedy the alleged violation before towing Plaintiff's

vehicle. Defendants failed in this requirement and are therefore liable to Plaintiff for tortious breach of the covenant of good faith and fair dealing.

46.  The Defendants' awful and unlawful conduct has resulted in injury to Plaintiff. The Defendants' towing action was extremely harmful to Plaintiff in an amount to be adduced at trial.

47.  Defendants, in their tortious breach of the covenant of good faith and fair dealing, acted with actual and constructive malice thereby justifying the imposition of punitive damages to punish Defendants and deter all others in an amount to be adduced at trial.

### <u>COUNT IV:</u>    NEGLIGENT BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

48.  The allegations in previous paragraphs above are incorporated herein by reference.

49.  Implied in every contract is the Covenant of Good Faith and Fair Dealing whereby parties to a contract mutually pledge to one another to act in good faith and deal fairly throughout the entire life of the contract. This pledge is a cornerstone and a fundamental principle  of contract law in that it acts as a deterrent against spiteful and malicious conduct in contract which can carry severe civil liability and monetary penalty.

50.  The misconduct of Defendants, as described above, infringes upon the federal Fair Housing Act (FHA) prohibitions and West Virginia state law. It constitutes a negligent breach of the covenant of good faith and fair dealing with respect to Defendants' contractual obligations to Plaintiff. Under

the covenant of good faith and fair dealing inherent and implied in every contract with respect to Defendants' contractual obligations to Plaintiff, Defendants were required to give Plaintiff sufficient notice of the alleged parking violation and sufficient time to remedy the alleged violation before towing Plaintiff's vehicle. Defendants failed in this requirement and are therefore liable to Plaintiff for negligent breach of the covenant of good faith and fair dealing.

51.   The Defendants' awful and unlawful conduct has resulted in injury to Plaintiff. The Defendants' towing action was extremely harmful to Plaintiff in an amount to be adduced at trial.

52.   Defendants, in their negligent breach of the covenant of good faith and fair dealing, acted with actual and constructive malice thereby justifying the imposition of punitive damages to punish Defendants and deter all others similarly situated in an amount to be adduced at trial.

**COUNT V:     DAMAGES UNDER COMMON LAW FOR DEFENDANTS' NEGLIGENT FAILURE TO COMPLY WITH WEST VIRGINIA NOTICE REQUIREMENTS BEFORE TOWING**

53.   The allegations in previous paragraphs above are incorporated herein by reference.

54.   The towing action of Defendants, as described above, violates West Virginia State law. It is customary for HOAs in West Virginia and indeed in nearly all states to issue their residents a written courtesy 96-hour notice

for any alleged parking violation, giving the resident time and opportunity to move their vehicle or otherwise remedy the alleged parking violation before towing. Moreover, West Virginia Code Section 17C-14-13 requires state and local law enforcement agencies be notified before and/or after towing. In their premature, hasty, wrongful and negligent towing action, Defendants failed to comply with these specific state notice requirements before and/or after towing.

55.   The Defendants' awful and unlawful conduct has resulted in injury to Plaintiff. The Defendants' negligent failure to comply with WV notice requirements was extremely harmful to Plaintiff in an amount to be adduced at trial.

**COUNT VI:    NEGLIGENCE**

56.   The allegations in previous paragraphs above are incorporated herein by reference.

57.   West Virginia Code Section 17C-14-13 covers the towing or removal of unauthorized vehicle parked on private property without having the express or implied permission from the owner of such land or property. But it also warns against liability of the party removing the vehicle or authorizing such removal for negligence. In the case at bar, not only had Defendants failed to meet West Virginia notice requirements before and after the towing as demonstrated above, but Plaintiff's family Expedition was not an unauthorized vehicle parked on private property. Plaintiff is a resident

homeowner of this community as alleged supra. And parking is expressly authorized on Rumbling Rock Road where Plaintiff's family SUV was parked, directly across the street from Plaintiff's living room window by clearly visible public signage. Defendants towed Plaintiff's vehicle solely and exclusively because it was parked opposite of traffic. However, the true and real reason was racial discrimination and unlawful retaliation for past clashes between Plaintiff and Defendants.

58.    In the case at bar, under West Virginia Code Section 17C-14-13, the most severe consequence Plaintiff could have suffered is a $100 fine, not the total and complete loss of his cherished and beloved family SUV. And WV Code Section 17C-14-13 does not even apply to Plaintiff because Plaintiff's vehicle was not parked without authorization on private property.

59.    Defendants' towing action was premature, hasty, wrongful, disproportionate and unreasonable. Furthermore Defendants' negligence is unequivocally established and irremediably undeniable. Defendants are therefore liable to Plaintiff.

60.  The Defendants' awful and unlawful conduct has resulted in injury to Plaintiff. Defendants' negligence was extremely harmful to Plaintiff and caused Plaintiff irreparable injury in an amount to be adduced at trial.

**COUNT VII:    CONVERSION**

61.  The allegations in previous paragraphs above are incorporated herein by reference.

62.    The reprehensible conduct of Defendants, as described above and below, amounts to and/or constitutes actual and/or constructive conversion.    Defendants intentionally deprived Plaintiff of his property, without just cause, as demonstrated above and below, refused to return it upon Plaintiff's repeated written requests and otherwise interfered with Plaintiff's ownership and enjoyment rights. Defendants also further unlawfully denied Plaintiff access to his own property in violation of state and federal laws.

63.  The Defendants' conduct was careless, reckless and reasonably calculated to ensure that Plaintiff's total and complete loss of his family SUV would be the result and Plaintiff's total and complete loss of his family SUV was indeed the result.

64.    Defendants' abhorrent and unlawful conduct was extremely harmful to Plaintiff and has resulted in irreparable injury to Plaintiff in an amount to be adduced at trial.

### COUNT VIII:    TRESPASS TO CHATTEL

65.  The allegations in previous paragraphs above are incorporated herein by reference.

66.    The reprehensible conduct of Defendants, as described above and below, amounts to and/or constitutes actual and/or constructive trespass to chattel.  Defendants intentionally accessed Plaintiff's family SUV without Plaintiff's knowledge or consent. Defendants intentionally deprived Plaintiff

of his property, without just cause, as demonstrated above and below, refused to return it upon Plaintiff's repeated written requests and otherwise interfered with Plaintiff's possessory interest. Defendants also further disrupted Plaintiff's possessory rights and unlawfully denied Plaintiff access to his own property in violation of state and federal laws.

67.  The Defendants' conduct was careless, reckless and reasonably calculated to ensure that Plaintiff's loss of use of his principal transportation and severe economic loss would be the result. Indeed Plaintiff's loss of use of his principal transportation and severe economic loss were the result.

68.  Defendants' abhorrent and unlawful conduct was extremely harmful to Plaintiff and has resulted in irreparable injury to Plaintiff in an amount to be adduced at trial.

### COUNT IX:  INVASION OF PRIVACY

69.  The allegations in previous paragraphs above are incorporated herein by reference.

70.  Through Defendants' actions, as described above and below, Defendants intruded upon Plaintiff's intimate, private and personal life and Defendants invaded Plaintiff's privacy. By accessing Plaintiff's 15-year family SUV without Plaintiff's knowledge or consent, Defendants had unauthorized and unacceptable access to Plaintiff's personal and private family possessions, goods and things kept in the vehicle over the years. This includes priceless souvenirs, photos, videos and even cash money.

Defendants' conduct caused irreparable harm and injury to Plaintiff.

71.  Defendants' awful and unlawful conduct has resulted in injury to Plaintiff in an amount to be adduced at trial.

<u>**COUNT X:   UNJUST ENRICHMENT**</u>

72.  The allegations in previous paragraphs above are incorporated herein by reference.

73.  The towing misconduct of Defendants, as described above, was egregious, scandalous and constitutes unjust enrichment under both federal common law and West Virginia State law.

74.  Defendants engaged in the unlawful towing scandal decried above to reap benefits they were not entitled to and enrich themselves at Plaintiff's expense. Defendants' egregious towing scandal was reasonably calculated to lead to economic and financial benefits for Defendants which Defendants did not deserve and were not entitled to in total disregard of the law and Plaintiff's rights.

75.  Defendants' unjust enrichment misconduct has resulted in injury to Plaintiff in an amount to be adduced at trial.

<u>**COUNT XI: DISCRIMINATION BASED ON RACE AND COLOR**</u>

76.  The allegations in previous paragraphs above are incorporated herein by reference.

77.  The conduct of Defendants, as described herein, was egregious, outrageous and constitutes discrimination based on race and color

proscribed under both federal law and West Virginia State law.

78.  Plaintiff who is Black is informed, believes, and thereon alleges based on that belief that his race and color played a role in Defendants' decision to deprive him of his property in total violation of both state and federal laws including the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601-19 ("FHA").

79.  Plaintiff is further informed, believes, and thereon alleges based on that belief that improper racially motivated retaliation was the true reason Defendants decided to deprive Plaintiff of his vehicle to teach Plaintiff a lesson. Plaintiff felt harassed when he received multiple times what he thought were annoying, bogus and racially motivated citations and/or warnings about his grass or garbage can that was placed in his driveway directly in front of his garage door, exactly where nearly all residents keep their garbage can. Plaintiff got fed up with Defendants' harassing and repeated citations and confronted Defendants, warning Defendants to leave him alone or there would be legal consequences. Plaintiff believes Defendants' totally unnecessary and unlawful decision to tow his vehicle was Defendants' retaliation for this confrontation.

80.  Defendants' abhorrent and discriminatory conduct has resulted in injury to Plaintiff in an amount to be adduced at trial.

81.  Defendants engaged in illegal discrimination acting with actual and/or constructive malice as to justify the imposition of punitive damages to

punish Defendants and deter all others similarly situated in an amount to be adduced at trial.

### COUNT XII:    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82. The allegations in previous paragraphs above are incorporated herein by reference.

83. The conduct of Defendants, as described above, was extreme, outrageous and reckless and it caused Plaintiff severe emotional distress, mental anguish and lasting trauma.

84. Defendants' awful and unlawful conduct has resulted in injury to Plaintiff in an amount to be adduced at trial.

85. Through their awful acts described above, Defendants are liable to Plaintiff for intentional infliction of emotional distress. Because Defendant acted with actual and constructive malice the Court should and would properly impose punitive damages to punish the Defendants and deter all others.

### COUNT XIII:    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

86. The allegations in previous paragraphs above are incorporated herein by reference.

87. The conduct of Defendants, as described above, was extreme, outrageous and reckless and it caused Plaintiff severe emotional distress, mental anguish and lasting trauma.

88. The Defendants' awful and unlawful conduct has resulted in injury

to Plaintiff in an amount to be adduced at trial.

89.  Through their awful acts described above, Defendants are liable to Plaintiff for negligent infliction of emotional distress. Because Defendants were extremely negligent and reckless in their conduct and/or acted with actual and constructive malice the Court should and would properly impose punitive damages to punish the Defendants and deter all others.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Declare judgment for Plaintiff and against Defendants on all Counts;

b. Award Plaintiff compensatory damages in an amount commensurate with the gravity and severity of Defendants' conduct and the proof to be adduced at trial;

c. Order Compensatory or Replacement Value of Plaintiff's vehicle;

d. Order Restitution or Replacement Value of all personal belongings lost in the vehicle;

e. Order Restitution of Plaintiff's cash in the vehicle;

f. Award Compensation and Reparation for loss of use, loss of enjoyment, inconvenience and loss of economic and financial opportunities;

g. Award punitive damages commensurate with Defendants' recklessness and callousness to punish Defendants and deter others;

h. Enter declaratory and injunctive relief;

i. Award such other and further relief, at law or in equity, as this Court

deems just and proper.

Dated: May 27, 2025

Respectfully submitted,

Maurice Dosso
19 Venetian Court
Hedgesville, WV 25427
(571) 771-6371
Bagay.Maller@mail.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 27, 2025